IN UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**SONJA ROSS,**

        **PLAINTIFF,**

**V.**

        **CIVIL ACTION NO.**
        2:16-CV-533

**KOCH FOODS OF ALABAMA, LLC,**

        **DEFENDANT.**        **JURY TRIAL DEMANDED**

## COMPLAINT

### I.    JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §1331, 1343(4), 1367, 2201, 2202 and 29 U.S.C. §2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," and pursuant to 42 U.S.C. § 1981. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by 28 U.S.C. § 1331, 29 U.S.C. §2601 *et seq.*, providing damages, injunctive relief and other relief.

2.    Defendant, KOCH FOODS OF ALABAMA, LLC ("Defendant"), is registered and does business in the State of Alabama and is subject to service of process in Alabama. Therefore, this Court has personal jurisdiction over Defendant.

1

## II.   PARTIES

3.     Plaintiff, Sonja Ross, hereinafter "Plaintiff," is a citizen of the United States, and a resident of Prattville, Autauga County, Alabama.  Plaintiff was formerly employed by the Defendant.

4.     Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).  Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.  Defendant's fifty or more employees worked within 75 miles of the location where Plaintiff worked.

## III.   STATEMENT OF FACTS

5.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6.     On May 24, 2013, Plaintiff commenced employment with Defendant.

7.     Defendant employed Plaintiff as a QA and scheduled her on the second shift.

8.     During September of 2013, Defendant transferred Plaintiff to the pack out area and scheduled her on the first shift.

9.     Plaintiff performed her job duties for Defendant in a competent or better manner.

10. The supervisor on first shift in Plaintiff's area was Herbert Amos (black).

11. During the course of Plaintiff's employment with Defendant, Amos would make "white" jokes.

12. Plaintiff found Amos' jokes offensive, but Plaintiff needed her job, and, at first, she was concerned about retaliation if she reported Amos to Defendant's upper management.

13. In July of 2015, Plaintiff complained to Laura (LNU) in HR about the fact that Amos singled out Plaintiff by raising his voice to Plaintiff, and in general treating Plaintiff worse than her co-workers.

14. The specific incident that led to Plaintiff's complaint about Amos was the fact that he told Plaintiff he was going to write up Plaintiff for going to the bathroom and Plaintiff had been at work that morning for three hours.

15. When Plaintiff complained to Laura (LNU) in HR, Plaintiff commented that she had to try to get out from under the supervision of Amos by seeking other positions with the company and that she had been turned down six times. Plaintiff expressed the belief to Laura (LNU) that Plaintiff felt like Amos was the reason Plaintiff had been turned down for the other positions. Plaintiff also told Laura (LNU) about Amos telling of "white jokes."

3

16.     Laura (LNU) required that Plaintiff put her complaints about Amos in writing.

17.     Plaintiff complied with Laura (LNU)'s instructions, and she provided her with dates of the various issues and also asked for a transfer away from Amos.

18.     Later that day, Plaintiff was informed that she would be transferred to the third shift under a different supervisor.

19.     When Plaintiff was transferred to third shift, Defendant placed Plaintiff in the sanitation department and under a new supervisor, Brandon (LNU) (white).

20.     While working on the third-shift in Defendant's sanitation department, Defendant required Plaintiff to report to work between 12:00 a.m. to 12:15 a.m. and work until 5:30 a.m.

21.     Plaintiff found that the specific work she was assigned to do "upstairs" took approximately three to three and a half hours to complete.

22.     When Plaintiff completed that work, she voluntarily went downstairs to help a co-worker complete her job duties.

23.     The supervisor on third shift, Brandon, would often not even be at work or be able to be found until 4:00 a.m. to 4:30 a.m.

24.     As a result, during the majority of that shift, Plaintiff had no one to ask permission of in order to be excused from work for any reason.

25.    On January 19, 2016, Defendant suspended Plaintiff from work for the claim of "stealing time."

26.    Defendant's claim of "stealing time" is a result of Plaintiff walking to her car in order to obtain medicine that she needed and then to return that medicine to her car, all of which was done without any interference with Plaintiff's job duties.

27.    Plaintiff completed her job duties for that day as she did every day.

28.    On or about January 17, 2016, Defendant terminated Brandon's employment and assigned Amos the responsibility8 of supervising the third-shift, including Plaintiff.

29.    Amos observed Plaintiff returning from her car with her medicine and he was the one who reported Plaintiff to HR and caused Plaintiff's termination.

30.    Laura (LNU), Defendant's HR employee, terminated Plaintiff on January 22, 2016, with the full knowledge that Amos had instigated the termination following Plaintiff's previous complaints of race discrimination.

**IV.   COUNT ONE - § 1981 - Retaliation**

31.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 30 above.

32.    Defendant, through its Manager, Herbert Amos, retaliated against Plaintiff by terminating Plaintiff because of her complaints of race discrimination.

5

33.     Defendant did not terminate Hispanic employees, committing the exact same acts of which Defendant accused the Plaintiff, and instead issued those employee no discipline at all.

34.     Plaintiff worked with a number of Hispanic employees, including Ceasars Fuentes and Hernandez Ramos Jose.

35.     As soon as they finished their work, the Hispanic employees left the premises while on-the-clock to get something to eat or would sit in their cars for the remainder of the shift until the QA Inspector released the employees at 5:30 a.m.

36.     Plaintiff had a legitimate need and reasonable medical reason to go to her car as Plaintiff had been out on FMLA intermittent leave the week before and needed to use her medication.

37.     When Plaintiff saw Amos, she informed Amos that Plaintiff was walking to her car to obtain her medication.

38.     In violation of § 1981, Defendant retaliated against Plaintiff because of her complaints of race discrimination and racial comments committed by Amos resulting in damage to Plaintiff in the form lost pay, benefits, and mental anguish.

V.     COUNT TWO - § 1981 – Race Discrimination

39.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 38 above.

40.     Plaintiff is a white female.

6

41.     Defendant hired Plaintiff on May 24, 2013.

42.     Defendant terminated Plaintiff's employment on January 22, 2016.

43.     Defendant terminated Plaintiff. for the claim of "stealing time" while Hispanic workers including Ceasars Fuentes and Hernandez Ramos Jose.

44.     As soon as they finished their work, the Hispanic employees left the premises while on-the-clock to get something to eat or would sit in their cars for the remainder of the shift until the QA Inspector released the employees at 5:30 a.m.

45.     Plaintiff had a legitimate need and reasonable medical reason to go to her car as Plaintiff had been out on FMLA intermittent leave the week before and needed to use her medication.

46.     In violation of § 1981, Defendant was substantially motivated by Plaintiff's race, white, in treating Plaintiff worse than employees of a different race, including Fuentes and Jose.

47.     As a result of Defendant's violation of § 1981, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## VI.   COUNT THREE – FMLA - Retaliation

48.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 47 above.

49.     Defendant hired Plaintiff on May 24, 2013.

50.     Defendant terminated Plaintiff's employment on January 22, 2016.

7

51.     As of January 22, 2016, Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

52.     As of January 22, 2016, Defendant employed fifty or more employees worked within 75 miles of the location where Plaintiff worked.

53.     As of January 22, 2016, Plaintiff was an eligible employee under the FMLA as she had been employed by Defendant for more than one year and had worked in excess of 1,250 hours during the twelve months preceding her FMLA leave.

54.     Plaintiff sought and Defendant approved Plaintiff for FMLA continuous leave for the time frame January 9, 2016, through January 14, 2016, due to a serious health condition.

55.     While Plaintiff was out on FMLA leave, she complied with company policy by calling in.

56.     At the conclusion of her FMLA leave, Plaintiff turned in a doctor's excuse to Defendant.

57.     Plaintiff had approved FMLA intermittent leave running from October 2015 through October 2016 for a serious health condition related to breathing.

58.    After Defendant transferred Plaintiff to the third shift, she continued to have medical problems related to her serious health condition for which she had approved intermittent FMLA leave.

59.    Plaintiff's doctor prescribed medication for congestion that Plaintiff needed to take.

60.    Defendant did not provide Plaintiff with a locker inside its premises where Plaintiff could safely store her medication.

61.    When Plaintiff did not have work to do on the third shift and she had the need to take her medication, she would walk to her car and retreive the medication and return it to her car at a later break time.

62.    Amos observed Plaintiff returning from her car after a break, and after she had taken her medication to treat her serious health condition.  Plaintiff explained to Amos about the need to take medication, but Amos still recommended the termination of Plaintiff's employment.

63.    At the time the decision was made to terminate Plaintiff's employmen, Laura (LNU) in HR had knowledge of Plaintiff's approved intermittent FMLA paperwork, and the reason for that intermittent leave.

64.    Defendant violated the FMLA by terminating Plaintiff's employment in retaliation for Plaintiff's use of FMLA on several occasions during her last year of employment with Defendant.

9

65.     As a result of Defendant's violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VII.    PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the following relief:

A.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family Medical Leave Act and § 1981;

B.      Enter an Order requiring the Defendant to make Plaintiff whole by awarding her reinstatement to the position she would have had, had she not been terminated; and,

C.      Award Plaintiff back pay, together with employment benefits, front pay, compensatory damages, nominal damages, special damages, liquidated damages and attorneys' fees and costs, and any additional relief as may be determined by the Court to which Plaintiff is entitled.


DAVID R. ARENDALL

10

_____
ALLEN D. ARNOLD

OF COUNSEL:
ARENDALL & ARNOLD
2018 Morris Avenue, Suite 300
Birmingham, AL 35203
(205) 252-1550 - Office
(205) 252-1556 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

DEFENDANT'S ADDRESS:

Koch Foods of Alabama, LLC
c/o Agent for Service of Process
C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

11